Rolling Meadows Cooperative, Inc.,
a Minnesota Cooperative,

      Plaintiff,      **MEMORANDUM OPINION AND ORDER**
  v.            Civil No. 12-564 ADM/TNL

United States Department of Housing
and Urban Development; and Shaun
Donovan, as Secretary of the United
States Department of Housing and
Urban Development,

      Defendants.

___

Brigid M. Goss, Esq., and Justin P. Short, Esq., Best & Flanagan, LLP, Minneapolis, MN, on behalf of Plaintiff.

Bahram Samie, Esq., and Friedrich Siekert, Esq., United States Attorney's Office, on behalf of Defendants.

___

## I. INTRODUCTION

On January 8, 2013, the undersigned United States District Judge heard oral argument on Plaintiff Rolling Meadows Cooperative's ("Rolling Meadows") Motion for Summary Judgment [Docket No. 18] and Defendants' (the "Government") Motion to Dismiss [Docket No. 23]. For the reasons discussed below, the Government's Motion to Dismiss is granted and Plaintiff's Motion for Summary Judgment is denied as moot.

## II. BACKGROUND

### A. Factual Background

Rolling Meadows is a low-income housing cooperative located in Inver Grove Heights, Minnesota. Compl. [Docket No. 1] ¶ 7. The Rolling Meadows property is divided into two

sections. Section I has 104 residential units and was developed in 1971. Id. at ¶ 13. Until September 2011, Section I was encumbered by a mortgage insured and subsidized by the United States Department of Housing and Urban Development ("HUD") pursuant to Section 236 of the National Housing Act ("NHA"), codified at 12 U.S.C. § 1715z-1 (HUD's "Section 236 program").[1] Id. at ¶ 15. Section II has 98 residential units and was developed in 1973. Section II is currently encumbered by a HUD Section 236 mortgage ("Section II - 236 Mortgage"), which is serviced by Berkadia Commercial Mortgage, LLC. Id. at ¶¶ 16, 19. Only Section II is at issue in this case.[2]

The NHA created the Section 236 program "for the purpose of assisting lower income families in acquiring homeownership or in acquiring membership in a cooperative association operating a housing project . . . ." 12 U.S.C. § 1715z. The program approves government subsidized and insured mortgages for low-income housing developers who submit to HUD regulations designed to provide housing for low-income tenants. In exchange for its government insured mortgage, Rolling Meadows signed a Regulatory Agreement with HUD. Pl.'s Mem. Supp. Summ. J. [Docket No. 20] Ex. H, Administrative Record ("AR") at 0009-16; see National Housing Act of 1968, Pub. L. No. 90-448, § 201, 82 Stat. 476, 498-501. The terms of the

---

[1] Plaintiff alleges that the mortgage attached to Section I was eventually approved for prepayment after an initial denial by HUD. The Government claims that this was not an approval of prepayment, but rather an acknowledgment that some time prior to January 1987 Fannie Mae mistakenly accepted an early payment. Because the Government does not have records of payments prior to January 1987, the Government contends it acceded to the early maturation of the mortgage but did not approve a prepayment. Regardless, Section I is not at issue in this case and does not serve as binding precedent on the Government's later denial of Section II prepayment.

[2] Section II - 236 Mortgage is scheduled for payoff June 1, 2014. Pl.'s Mem. Supp. Summ. J. at 12.

2

Regulatory Agreement remain in effect as long as the cooperative is making payments on the mortgage. The Regulatory Agreement requires Rolling Meadows to maintain a reserve fund under the control of the mortgagee, to maintain a general operating reserve, to observe strict income limits for occupants; and additionally, the Regulatory Agreement prohibits the cooperative from selling, encumbering, remodeling, incurring liabilities in excess of a certain amount, and entering into contracts for management or supervisory services without prior approval of the Secretary of HUD (the "Secretary"). AR at 0009-16. At the time the cooperative fully satisfies the mortgage obligation, HUD regulation concludes.

In December 2011, Rolling Meadows informed Berkadia that it sought to prepay its Section II – 236 Mortgage. Pl.'s Mem. Supp. Summ. J. at 12. Berkadia approved, but the NHA required Rolling Meadows to obtain the Secretary's approval. Id.; National Housing Act of 1983, Pub. L. No. 98-181, 97 Stat. 1221, codified at 12 U.S.C. § 1715z-15. In February 2012, HUD denied Rolling Meadows' request for prepayment. Pl.'s Mem. Supp. Summ. J. Ex. N, AR at 00037-38. HUD provided three reasons for denial: (1) Rolling Meadows failed to provide an appropriate 150 day prepayment notification letter; (2) the Property did not meet the Section 250(a) repair requirements; and (3) Rolling Meadows refused to enter a Use Agreement. Id. The Use Agreement would allow HUD to continue oversight of the cooperative, as it would have done under the Regulatory Agreement until the maturity date of the original mortgage, June 1, 2014.

Rolling Meadows objected to HUD's reasons for denial of prepayment. Pl.'s Mem. Supp. Summ. J. at 10-11, 12. Rolling Meadows asserted it had sent 150 day prepayment notification letters to its shareholders/residents, which satisfies the notification requirement. Id.

3

Second, Rolling Meadows was not seeking funding for repairs to the property and no repairs were necessary. Id. And finally, Rolling Meadow believed it did not need a Use Agreement because there was no such requirement in Section 250(a) and because Rolling Meadows' members voted to remain a limited equity, low-income housing cooperative following satisfaction of its mortgages. Id. HUD maintained it's denial of permission for prepayment.

**B. Procedural Background**

On March 2, 2012, Rolling Meadows filed this suit challenging HUD's decision to deny prepayment. See Compl. The Complaint asserts this Court has jurisdiction pursuant to 28 U.S.C. §§ 1361, 1331(a), 2201 to 2202, and 1367. Id. at ¶¶ 2-3. The Complaint also asserts jurisdiction pursuant to Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 to 706. On November 5, 2012, the Government submitted its Memorandum in Support of Motion for Dismissal/Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 24]. The Government challenged each of Rolling Meadows' bases for jurisdiction, arguing that the Government has sovereign immunity. Rolling Meadows responded on November 26, 2012; it abandoned all jurisdictional bases pled in the Complaint, except for its APA § 701 claim. Pl.'s Resp. [Docket No. 29]. In addition to defending its APA jurisdictional claim, Rolling Meadows asserts a new jurisdictional ground for bringing its claims, the "sue and be sued" provision of 12 U.S.C § 1702. Id. at 3.

### III.  DISCUSSION

**A.  Standard of Review**

The Government moves to dismiss this action for lack of subject matter jurisdiction. If subject matter jurisdiction is lacking over a claim, the claim must be dismissed. Fed. R. Civ. P.

4

12(b)(1), 12(h)(3). The Court may "dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008) (internal quotation and citation omitted). The basis for a dismissal for lack of subject matter jurisdiction depends on whether the complaint is challenged on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge, the court restricts itself to the face of the pleadings, and all of the factual allegations concerning jurisdiction are presumed to be true. Titus, 4 F.3d at 593.

**B. Administrative Procedure Act**

Rolling Meadows is seeking a declaratory judgment that, by refusing to allow Rolling Meadows to prepay its Section II - 236 Mortgage, HUD violated the NHA. Rolling Meadows claims jurisdiction premised on the APA, 5 U.S.C. §§ 701-06. The Government responds that its decision to deny prepayment is committed to agency discretion by law; therefore, the NHA claim is excepted from the APA's limited waiver of sovereign immunity. The Government moves for dismissal on the basis of Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction.

The APA grants judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The Supreme Court has determined that judicial review of agency action is not appropriate, however, "where agency action is committed to agency discretion by law." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (citing 5

5

U.S.C. § 701(a)) (internal quotations omitted). The "committed to agency discretion" exception under § 701(a) is "applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Id. Where the court can find no "meaningful standard against which to judge [an] agency's exercise of discretion," subject matter jurisdiction is lacking and judicial review is not available. Heckler v. Chaney, 470 U.S. 821, 830 (1985).

In the context of the NHA, Congress limits the Secretary's ability to *accept* prepayments. The law provides in relevant part:

> . . . [T]he Secretary shall *not* accept an offer to prepay the mortgage . . . unless—
> (1)  the Secretary has determined that such project is no longer meeting a need for rental housing for lower income families in the area;
> (2)  the Secretary
>   (A)  has determined that the tenants have been notified of the owner's request for approval of a prepayment;
>   (B)  has provided the tenants with an opportunity to comment on the owner's request; and
>   (C)  has taken such comments into consideration; and
> (3)  the Secretary has ensured that there is a plan for providing relocation assistance for adequate, comparable housing for any lower income tenant who will be displaced as a result of the prepayment and withdrawal of the project from the program.

12 U.S.C. § 1715z–15 (emphasis added). The Government and Rolling Meadows agree the law sets forth the conditions under which the Secretary is permitted to *approve* prepayment of certain insured mortgages. Furthermore they agree § 1715z-15 reflects Congress' awareness that prepayments could result in projects being lost as low-income housing resources if owners prepaid their mortgages and were no longer subject to HUD regulation. Both parties cite Senator Christopher Dodd's expressed concern, "the owners of some of these projects [built under the Section 236 program] will take them off of the low-income housing market, by converting them to condominiums or renting them to higher income tenants." Pl.'s Mem. Supp. Summ. J. at 4

6

(citing 128 Cong. Rec. 7853-54 (daily ed. April 9, 1982). Finally, the parties agree that the purpose of Section 250 is to maintain an adequate supply of available low-income housing in the community. The Government and Rolling Meadows disagree only about whether the above statute gives Rolling Meadows a legal right to prepay its mortgage.

The NHA commits denials of mortgage prepayments to agency discretion. Congress set a very high bar for the approval of mortgage prepayments. Approval of a mortgage prepayment is not discretionary; the Secretary must first determine the low-income housing project is "no longer meeting a need for rental housing for lower income families in the area." 12 U.S.C. § 1715z–15. Because oversight is tied to the term of the mortgage and because that oversight ends when the mortgage is satisfied, Congress provided a mechanism for challenging the Secretary's prepayment approval decisions. The inverse is not true. Congress was not concerned about the Secretary's denial of a request to prepay and provided no standard by which to review these denials. Without a standard to review the Secretary's denial of a request to prepay, judicial scrutiny of the Secretary's decision is inappropriate. Congress, concerned with maintaining low-income housing projects under HUD regulation, limited the Secretary's discretion to approve prepayments, but Congress left denials to agency discretion. Therefore, subject matter jurisdiction is lacking for review of 12 U.S.C. § 1715z–15 denial decisions under the APA.

**C. Standing**

In its Complaint, Rolling Meadows failed to assert jurisdiction under the NHA's "sue and be sued" provision of 12 U.S.C. § 1702, a statute waiving sovereign immunity under certain conditions. Not until after the Government responded to Rolling Meadows' Motion for Summary Judgment did Rolling Meadows raise this new jurisdictional argument. Generally, a

7

plaintiff may not raise new grounds for jurisdiction in its reply brief, but must amend its Complaint. But, in the interest of judicial economy, the Court will consider the issue of standing here.[3]

Assuming a valid waiver of sovereign immunity, Rolling Meadows is still required to have standing to sue for the Secretary's denial of prepayment under 12 U.S.C. § 1715z–15. "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir. 2012). This case implicates the latter. "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury." Id. (citing Graden v. Conexant Sys., Inc., 496 F.3d 291, 295 (3rd Cir. 2007)); see also City of Clarkson Valley v. Mineta, 495 F.3d 567, 570 (8th Cir. 2007) (remanding a case to district court for failure to consider if the injury complained of fell within the zone of interests sought to be protected by the statutory provisions).

As discussed above, 12 U.S.C. § 1715z–15 limits the Secretary's approval of mortgage prepayments, it does not limit his denial. Rolling Meadows' project owners negotiated a beneficial subsidized and insured mortgage and in exchange submitted itself to HUD regulation for the term of the mortgage. Rolling Meadows has not demonstrated a legal right, a private right of action in favor of project developers, to end HUD regulation by prepayment. See

---

[3] The mortgage matures in the not so distant future, June 1, 2014.

Shivers v. Landrieu, 674 F.2d 906, 910-911, n.21 (D.C. Cir. 1981). Without standing, subject matter jurisdiction is still lacking and the Government's motion to dismiss must be granted.

IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 23] is **GRANTED** with prejudice; and,

2. Plaintiff's Motion for Summary Judgment [Docket No. 18] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 11, 2013.